United States District Court
Southern District of Texas
**ENTERED**
July 26, 2023
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| SABRA EGBERT, § | |
| § | |
| Plaintiff, § | |
| VS. § | CIVIL ACTION NO. 4:22-CV-4143 |
| § | |
| SILVERADO SENIOR LIVING § | |
| MANAGEMENT, INC., § | |
| § | |
| Defendant. § | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is a motion to compel arbitration filed by Defendant Silverado Senior Living Management, Inc. ("Silverado"). (Dkt. 7). After reviewing the motion, the response, the reply, the entire record, and the applicable law, the Court finds the motion should be **DENIED**.

### BACKGROUND

Silverado operates facilities that provide elder care services in multiple states. Plaintiff Sabra Egbert was employed by Silverado as a manager. In this capacity, Silverado paid Egbert an hourly wage for a set number of hours per week. Silverado required managers, including Egbert, to work in an "on-call" capacity for one-week periods every four to six weeks. Managers who were on-call in a given week were required to address after-hours issues that arose at Silverado's facilities. Egbert did not receive additional compensation for her after-hours on-call work.

1

Egbert filed the present lawsuit after Silverado terminated her, asserting claims under the Fair Labor Standards Act for unpaid regular wages, overtime wages, and liquidated damages. (Dkt. 1 at 9-8). Egbert also alleged that Silverado retaliated against her for complaining about unpaid work and further alleged that Silverado's violations were willful. (Dkt. 1 at 9). Egbert also brought state-law claims for breach of contract, quantum meruit, and promissory estoppel. (Dkt. 1 at 10-12). Silverado filed the present motion to compel arbitration. (Dkt. 7). Silverado's motion is considered below.

## LEGAL STANDARD

The Federal Arbitration Act ("FAA") permits an aggrieved party to file a motion to compel arbitration when an opposing "party has failed, neglected, or refused to comply with an arbitration agreement." *Am. Bankers Ins. Co. of Fla. v. Inman*, 436 F.3d 490, 493 (5th Cir. 2006) (quoting *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 24 (1991)); see also 9 U.S.C. § 4. FAA Section 4 provides that, when a party petitions the court to compel arbitration under a written arbitration agreement, "[t]he court shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement. The hearing and proceedings, under such agreement, shall be within the district in which the petition for an order directing such arbitration is filed." 9 U.S.C. § 4.

In ruling on a motion to compel arbitration, the court first determines whether the parties agreed to arbitrate the particular type of dispute at issue. *JP Morgan Chase & Co. v. Conegie ex rel. Lee*, 492 F.3d 596, 598 (5th Cir. 2007). "Answering this question requires

considering two issues: '(1) whether there is a valid agreement to arbitrate between the parties; and (2) whether the dispute in question falls within the scope of that arbitration agreement.'" *Carey v. 24 Hour Fitness, USA, Inc.*, 669 F.3d 202, 205 (5th Cir. 2012) (quoting *Conegie*, 492 F.3d at 598). Once a valid arbitration agreement is found, the FAA's "strong national policy favoring arbitration of disputes" applies, and "all doubts concerning the arbitrability of claims should be resolved in favor of arbitration." *Wash. Mut. Fin. Group, L.L.C. v. Bailey*, 364 F.3d 260, 263 (5th Cir. 2004) (quotations omitted); *EEOC v. Waffle House, Inc.*, 534 U.S. 279, 294 (2002).

## ANALYSIS

The dispute in the case falls within the first prong of the arbitration analysis: whether there is a valid agreement to arbitrate between the parties. Silverado contends that a valid agreement was made when Egbert accepted the terms of Silverado's Mutual Arbitration Dispute Resolution Policy ("the Arbitration Policy")—which is in Silverado's Associate Handbook ("the Handbook)—by signing an Associate Acknowledgement form ("the Acknowledgement"). (Dkts. 7 at 4; 7-2 at 82-88). Egbert argues that the Arbitration Policy is illusory and unenforceable because Silverado reserved the right to unilaterally alter the Arbitration Policy without advance notice. (Dkt. 8 at 6-7).[1] The Court agrees with Egbert.

---

[1] Egbert also challenges the authenticity of the Handbook and Acknowledgment, which were attached to Silverado's motion to compel arbitration. (Dkt. 8 at 2-5). Given that Silverado authenticated the documents via an affidavit (Dkt. 9-1 at 2), and given the Acknowledgment's provision that "compliance with [Silverado's] personnel policies is a condition of [] employment" (Dkt. 7-2 at 88), the Court is satisfied that the Handbook and Acknowledgment exhibits are authentic and that Egbert accepted the terms of the Handbook and Acknowledgment when she was employed by Silverado.

Courts apply "ordinary state-law principles that govern the formation of contracts" when determining whether an agreement to arbitrate is valid. *Morrison v. Amway Corp.*, 517 F.3d 248, 254 (5th Cir. 2008). In Texas, "an arbitration clause is illusory if one party can 'avoid its promise to arbitrate by amending the provision or terminating it altogether.'" *Carey v. 24 Hour Fitness, USA, Inc.*, 669 F.3d 202, 205 (5th Cir. 2012) (quoting *In re 24R, Inc.*, 324 S.W.3d 564, 567 (Tex. 2010)). In other words, an arbitration agreement that can be retroactively modified by one party who retains the power to terminate the agreement is not enforceable. *Id.*; *see also Nelson v. Watch House Int'l, L.L.C.*, 815 F.3d 190, 193–95 (5th Cir. 2016) (holding an arbitration agreement to be illusory because it allowed the employer to terminate or modify the agreement but did not contain a savings clause or notice period).

Egbert argues that the Arbitration Policy is illusory because (1) the Arbitration Policy is part of the Handbook, thus (2) the following provisions in the Handbook and the Acknowledgment render the Arbitration Policy unenforceable:

- the Handbook's statement that Silverado "reserves the right to modify its policies and practices without prior notice" (Dkt 7-2 at 12),

- the Handbook's statement that Silverado "may change, rescind, or add to any policies or practices described in the handbook from time to time in its sole and absolute discretion" (Dkt. 7-2 at 86), and

- the Acknowledgement's statement that all provisions in the Handbook, except for the at-will relationship between Silverado and its employees, "are subject to change at any time" (Dkt. 7-2 at 88).

4

In response, Silverado argues that the provisions reserving Silverado's right to unilaterally alter the terms of the Handbook do not apply to the Arbitration Policy. (Dkt. 9 at 5-7). Silverado also argues that the Handbook's notice provision distinguishes its Arbitration Policy from those that have been found to be illusory. (Dkt. 9 at 5-7). For the reasons discussed below, the Court disagrees with Silverado's arguments.

As an initial matter, Egbert is correct that if the Arbitration Policy fell within the provisions allowing Silverado to unilaterally modify the terms of the Handbook without notice, then the Arbitration Policy would be illusory and thus unenforceable. *See Scudiero v. Radio One of Texas II, L.L.C.*, 547 F. App'x 429, 432 (5th Cir. 2013) (holding that an arbitration policy was illusory when the policy was "contained in the [employee] handbook in which [the employer] reserved the right to unilaterally supersede, modify or eliminate existing policies"); *Thennes v. EMIT Techs., Inc.*, No. CV H-21-1435, 2021 WL 7708530, at *2 (S.D. Tex. Sept. 21, 2021) ("[T]he provision in the Handbook acknowledgment which allows [the employer] to alter the terms of the Handbook renders the Arbitration Agreement illusory and unenforceable."). Thus, the critical question here is whether Silverado is correct in arguing that the Arbitration Policy somehow falls outside of these provisions. The Court finds that the Arbitration Policy is not exempted from the provisions.

Silverado contends that "[t]he Mutual Arbitration Policy is set apart from the remainder of the Handbook, with a single immaterial exception, as the only part that expresses mutual agreements." (Dkt. 9 at 2). Silverado makes much of the use of the word "mutual" in the Arbitration Policy's title and provisions. (Dkt. 9 at 2, 3, 4, 6). But the mere use of the word "mutual" has no legal effect in itself, nor does it somehow override

5

Silverado's oft-stated, unilateral authority to modify the policies outlined in the Handbook—policies which include its "Mutual" Arbitration Policy.

Silverado also highlights a particular Handbook notice provision in an attempt to distinguish its Arbitration Policy from others that have been determined to be illusory. The provision in question states that "[a]ny additions, deletions or changes in the policies or practices described in this handbook will become effective immediately upon notice to associates, *unless stated otherwise*." (Dkt. 7-2 at 12, emphasis added).[2] Silverado argues that this provision distinguishes its Arbitration Policy from the one in *Nelson v. Watch House Int'l, LLC*, 815 F.3d 190 (5th Cir. 2016), which was found to be illusory because changes to its arbitration policy were "effective upon notice to [employees] of its terms, *regardless of whether it is signed by either Agreeing Party*." *Nelson*, 815 F.3d at 192-93 (emphasis added).

According to Silverado, the Arbitration Policy here is different because, unlike the policy in *Nelson*, changes to its Arbitration Policy are effective only upon "approval to its modification" by Egbert. (Dkt. 9 at 5). Put another way, Silverado argues that its Arbitration Policy falls within the "unless stated otherwise" exception to the Handbook's default rule that policy changes are effective upon notice to employees. But as far as the Arbitration Policy is concerned, no such exception appears in the Handbook, Arbitration Policy, or the Acknowledgement. While the Acknowledgment contains such an effective-upon-mutual-approval provision for any alterations of employees' at-will-relationship

---

[2] The Court notes that this statement immediately follows the provision that "Silverado reserves the right to modify its policies and practices without prior notice." (Dkt. 7-2 at 12).

status, that is the only carve-out to the effective-upon-notice default. (Dkt. 7-2 at 88). Thus, *Nelson* supports a finding that Silverado's Arbitration Policy is illusory.

Silverado highlights another savings clause in the Handbook which provides that "[i]f any of the policies or practices in this handbook becomes illegal for any reason, the applicable state or federal law will be followed." (Dkt. 7-2 at 12). But that provision does not support the granting of Silverado's motion to compel arbitration; indeed, that provision supports a denial of that motion under Texas law.

The Court thus finds that Silverado's Arbitration Policy is illusory and unenforceable.

## CONCLUSION

For the reasons stated above, the Court **DENIES** Silverado's motion to compel arbitration. (Dkt. 7).

**IT IS SO ORDERED.**

SIGNED AT HOUSTON, TEXAS, on July 26, 2023.

_____
GEORGE C. HANKS, JR.
UNITED STATES DISTRICT JUDGE